**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

JEFFERY LADNER                                                              PLAINTIFF

v.                                                 CIVIL ACTION NO. 2:12-cv-131-MTP

RONALD WOODALL, ET AL.                                              DEFENDANTS

<u>OPINION AND ORDER</u>

THIS MATTER is before the Court on the Motion for Summary Judgment [36] filed by

Defendants Dr. Ronald Woodall, Dr. Thomas Lehman, and Wexford Health Sources, Inc.

Having reviewed the submissions of the parties and the applicable law, the Court finds that the

Defendants' Motion for Summary Judgment should be granted.

**FACTUAL BACKGROUND**

On August 2, 2012, Plaintiff Jeffery Ladner, proceeding *pro se* and *in forma pauperis*,

filed his Complaint [1] pursuant to 42 U.S.C. § 1983.  Through his Complaint, and as clarified

during his *Spears*[1] hearing, Plaintiff asserts claims against Defendants Dr. Woodall, Dr. Lehman,

and Wexford Health Sources, Inc. ("Wexford") for the denial and/or delay of adequate medical

treatment and retaliation.[2]  Specifically, Plaintiff alleges that Defendants denied him new

diabetic shoes and denied him treatment for his ailing left knee.  Plaintiff alleges that Defendants

acted with retaliatory motives in denying him proper medical care.  Plaintiff seeks monetary

damages for the alleged violations of his constitutional rights. (Omnibus Order [31].)

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing took place on April 23, 2013.

[2] Wexford is a private entity which provides medical care to Mississippi Department of Corrections inmates.  Wexford employs Dr. Woodall and Dr. Lehman.

1

The allegations in Plaintiff's Complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI"). Plaintiff is currently incarcerated at SMCI serving two life sentences after having been convicted of two murders in Hancock County.[3] On August 22, 2013, Defendants Dr. Woodall, Dr, Lehman, and Wexford filed their Motion for Summary Judgment [36].

## STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id* at 712.

There, however, must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations,"[4] unsubstantiated assertions,[5] or the presence of a "scintilla of evidence,"[6] is not enough to create a real controversy regarding material facts.

---

[3] *See* http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=02232 (last visited December 12, 2013).

[4] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990)

[5] *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994)

[6] *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983. Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'right, privileges, or immunities secured by the Constitution and laws' of the United States." *Id*. (quoting 42 U.S.C. § 1983). Accordingly, Plaintiff must demonstrate a genuine issue of material fact as to the following two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law.

Regarding the state-actor element, Defendants include a private health care entity and two private physicians. The Supreme Court, however, has explicitly held that Section 1983 liability applies to physicians who are not formally employed by a state, but who instead provide medical care to prisoners as government contractors. *West v. Atkins*, 487 U.S. 42, 49-57 (1988); *Bishop v. Karney*, 408 Fed. App'x. 846, 848 (5th Cir. 2011). In other words, private physicians serving inmates populations satisfy the state-action requirement of Section 1983.

Turning to the element of a constitutional deprivation, it is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted).  "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."  *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents."  *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted).  The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

**Official Capacity**

To the extent Plaintiff has asserted claims against the Defendants in their official

4

capacity, those claims should be dismissed.  The Eleventh Amendment bars "an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Education Service Center*, 307 F.3d 318, 326 (5th Cir. 2002).  "Eleventh Amendment immunity extends to any agency or entity deemed an 'alter ego' or 'arm' of the state." *Id*. (citing *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 688-89 (5th Cir. 2002)).  A suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989).  Therefore, Plaintiff's claims against Defendants in their official capacity amount to a suit against the state of Mississippi.

Section 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1975).  Additionally, Mississippi has not waived its Eleventh Amendment immunity. Miss. Code Ann. § 11-46-3.  Accordingly, the Eleventh Amendment bars Plaintiff's claims asserted against the Defendants in their official capacity, and summary judgment should be entered in Defendants' favor.[7]  That leaves for consideration Plaintiff's Section 1983 claim against Defendants in their individual capacity.

### Denial of Adequate Medical Care

Plaintiff alleges claims against the Defendants for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment.  Specifically, Plaintiff claims he was denied adequate medical treatment by Dr. Woodall and Dr. Lehman when they denied his

---

[7] A narrow exception to this immunity exists which provides that a state official may be sued in his or her official capacity for *injunctive* relief without violating the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Oliver*, 276 F.3d at 742.  That exception does not apply in this case because Plaintiff only seeks monetary relief from Defendants. (Omnibus Order [31] at 2.)

request for reissuance of diabetic shoes and failed to properly treat his left knee.  Plaintiff claims that Wexford, as the employer of Dr. Woodall and Dr. Lehman, is also responsible for his constitutional deprivation.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the inmate alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838.  Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Diabetic Shoes

Plaintiff suffers from diabetes and other serious medical issues, and the record reflects that he received regular treatment for his medical issues. Regarding diabetic shoes, on January 12, 2011, the site medical director, Dr. Ronald Woodall, approved diabetic shoes for Plaintiff after he examined Plaintiff and found a loss of "protective sensation with callous formation and neuropathy." (MSJ [36] Ex. C: Plaintiff's Medical Records at 206.) The regional medical director, Dr. Thomas Lehman, reviewed this decision and denied the diabetic shoes. (MSJ Ex. C at 206.) On February 14, 2011, Dr. Woodall again approved a pair of diabetic shoes for Plaintiff after an examination by a nurse practitioner revealed that Plaintiff suffered from "cracks, sores to both feet." (MSJ Ex. C at 223.) Dr. Lehman approved this decision. (MSJ Ex. C at 223.) On February 25, 2011, Plaintiff received a pair of diabetic shoes. (MSJ Ex. C at 224.)

Later that year, on November 8, 2011, the medical staff at the Chronic Care Clinic examined Plaintiff and performed a diabetic foot screen. (MSJ Ex. C at 320-21.) At that time, Plaintiff's feet appeared normal with no loss of protective sensation. (MSJ Ex. C at 321.) On November 17, 2011, however, Plaintiff complained of swelling and pain in his right leg and requested new diabetic shoes. (MSJ Ex. C at 329.) A nurse practitioner examined Plaintiff and

7

administered an antibiotic. (MSJ Ex. C at 336.)  On December 16, 2011, Dr. Charmaine

McCleave examined Plaintiff, and the medical staff performed another diabetic foot screen.

(MSJ Ex. C at 350-51.)  Plaintiff's feet appeared normal. (MSJ Ex. C at 350-51.)

On January 3, 2012, Plaintiff again complained of leg and feet pain. (MSJ Ex. C at 370.)

Dr. Woodall approved a pain medication for diabetic neuropathy (disturbance in the nervous

system). (MSJ Ex. C at 370.)  On January 16, 2012, Plaintiff made another request for new

diabetic shoes, but Dr. Woodall denied his request. (MSJ Ex. C at 380, 388.)  The denial stated

"1 per year." (MSJ Ex. C at 388.)  Presumably, this statement referred to the following policy

regarding therapeutic shoes at the facility:

> In the event that an inmate may require shoe replacement less than one year
> following initial receipt of the shoes and may not be able to obtain shoes at his/her
> own expense, the Chief Health Officer/Medical Executive will carefully evaluate the
> circumstances involved and may prescribe replacement shoes as an exception to
> policy.  In such case, the Chief Health Officer/Medical Executive will properly
> record the conditions which warranted an exception to this policy.

(MSJ Ex. B: Therapeutic Shoe Policy.)

After the denial, Plaintiff continued to complain of pain in his feet and request new shoes.

(MSJ Ex. C at 403.)  On February 22, 2012, Dr. Woodall again denied a request for new shoes

but approved an increase in Plaintiff's medication for neuropathic pain. (MSJ Ex. C at 403.)  On

March 9, 2012, Dr. McCleave examined Plaintiff.  Plaintiff was uncooperative and eventually

"had to be asked to leave office as he was becoming more and more verbally abusive." (MSJ Ex.

C at 416.)  Despite Plaintiff's behavior, Dr. McCleave was able to complete the examination and

found callouses on the back of his heels but "no ulcerations, sores or deformity." (MSJ Ex. C at

413-15.)  Dr. McCleave stated, "I do not believe he needs special shoes." (MSJ Ex. C at 416.)

On March 19, 2012, Plaintiff again requested a new pair of diabetic shoes. (MSJ Ex. C at

8

424.)  A nurse practitioner examined Plaintiff and found cracking on his feet. (MSJ Ex. C at

428.)  On March 23, 2012, Dr. Woodall and Dr. Lehman approved a new pair of diabetic shoes

for Plaintiff. (MSJ Ex. C at 428.)

   After he was provided a new pair of diabetic shoes, however, Plaintiff continued to

complain of pain in his feet. (MSJ Ex. C at 445.)  In May, 2012, he told the medical staff "you

know I have that neuropathy real bad." (MSJ Ex. C at 445.)  Dr. Woodall approved the

continuation of Plaintiff's medication for neuropathic pain and the administration of additional

pain medications. (MSJ Ex. C at 445, 451.)   Throughout June, July, and August of 2012,

Plaintiff complained of pain in his legs and feet. (MSJ Ex. C at 461, 476, 499.)  The medical

staff did not note any wounds or injuries to his feet during that time. (MSJ Ex. C at 461, 476,

499.)

   Dr. Woodall, in his Motion for Summary Judgment [36] and Supporting Memorandum

[37], argues Plaintiff has failed to establish that he was deliberately indifferent to Plaintiff's

medical needs, and thus, he is entitled to judgment as a matter of law.[8]  In support of his Motion

[36], Dr. Woodall submitted a transcript of the *Spears* hearing, Plaintiff's medical records, and

his own affidavit. (MSJ Exs. A-C.)

   In order to succeed on his claims, Plaintiff must demonstrate that Dr. Woodall was

deliberately indifferent to Plaintiff's serious medical needs. *See Davidson*, 91 Fed. App'x at 964.

Plaintiff has not met this burden.  Plaintiff has failed to come forward with evidence that he was

exposed to a "substantial risk of serious harm" and Dr. Woodall was aware of such risk and

---

[8] Dr. Woodall, Dr. Lehman, and Wexford jointly filed a Motion for Summary Judgment.
Plaintiff's claims against Dr. Lehman and Wexford are discussed below.

disregarded it. *See Farmer*, 511 U.S. at 838.  Based on the evidence before the Court, Dr. Woodall nor any other medical professional ever refused to treat Plaintiff, ignored his complaints, or denied him medical treatment. *Domino*, 239 F.3d at 756.  To the contrary, when Plaintiff presented with a complaint, the medical staff, including Dr. Woodall, saw him and provided him with treatment.

Plaintiff's requests for new diabetic shoes were related to pain in his feet and legs. According to Dr. Woodall's affidavit, the primary purpose of diabetic shoes is to limit foot wounds and injuries caused by improperly fitting shoes, not to alleviate pain from diabetic neuropathy.[9] (MSJ Ex. B: Affidavit of Dr. Woodall.)  Dr. Woodall's sworn testimony is consistent with the medical records.  Plaintiff first received a pair of diabetic shoes after the medical staff noted cracks and sores on his feet. (MSJ Ex. C at 223.)  Thereafter, Plaintiff complained of pain caused by diabetic neuropathy, but he did not suffer from wounds or injuries to his feet.  When the medical staff found cracks on Plaintiff's feet in March, 2012, he received a new pair of diabetic shoes. (MSJ Ex. C at 428.)  After Plaintiff received his new shoes, he continued to complain of pain in his feet.[10] (MSJ Ex. C at 445.)

---

[9] Plaintiff disagrees with Dr. Woodall's description of diabetic shoes and points to the facility's definition of therapeutic shoes found in the therapeutic shoes policy.  The policy states that therapeutic shoes "are designed to altered to provide a therapeutic benefit or accommodation of a specific foot or lower extremity disorder." (MSJ Ex. B.)  According to Plaintiff, diabetic shoes should improve all of the symptoms of his lower extremity disorder.  Plaintiff erroneously equates therapeutic shoes and diabetic shoes.  By its definition, therapeutic shoes encompass diabetic shoes.  Dr. Woodall explained the specific therapeutic benefit diabetic shoes are designed to provide diabetic patients.

[10] Plaintiff argues that the delay in receiving a new pair of diabetic shoes "resulted in his disease being advanced, by spreading throughout his body." (Resp. [40] at11.)  Plaintiff, however, does not provide any evidence, or even an explanation, supporting this assertion. *See Hopper*, 16 F.3d at 96-97 (explaining that unsubstantiated assertions are not enough to create a

Prior to March, 2012, Dr. Woodall held the opinion that Plaintiff did not need a new pair of diabetic shoes; Plaintiff disagreed. However, "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292. The record demonstrates that Plaintiff was provided access to medical professionals, including Dr. Woodall. The medical professionals assessed Plaintiff's condition and consistently treated his conditions and pain associated with those conditions. The record does not support a finding of deliberate indifference. *See Guillen v. Stanley*, 2006 WL 2065571, at *5-6 (E.D. Tex, July 24, 2006) (holding that inmate's disagreement with medical opinion that he did not need medical boots did not amount to a constitutional violation); *see also Thomas v. Herrera*, 2005 WL 3307528, at *6 (S.D. Tex. Dec. 6, 2005) (holding that inmate's disagreement with medical opinion that he did not need special work boots did not amount to a constitutional violation).

Even if Dr. Woodall were negligent in his treatment of Plaintiff, this does not rise to the level of a constitutional violation; Plaintiff is not entitled to the "best" medical treatment available. *See Daniels*, 474 U.S. at 333-34; *McMahon*, 583 F.2d at 174; *Davidson*, 91 Fed. App'x at 965 (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)) ("Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983."); *Bennett v. Louisiana ex rel. Dep't of Public Safety and Corr.*, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009) (affirming dismissal of plaintiff's wrongful death claim against prison officials, reasoning "[w]hile the [officials] may very well have exercised poor medical judgment in not performing additional tests on [the deceased prisoner], [plaintiff] has not shown that their actions rise to the level of deliberate indifference").

---

real controversy regarding material facts).

Dr. Lehman, in his Motion for Summary Judgment [36] and Supporting Memorandum [37], claims that he "never saw [Plaintiff], never talked to him, never refused to see him, and was not involved in the treatment or provision of diabetic shoes during this timeframe . . . ." (Memo. Sup. MSJ [37] at 7.)  Plaintiff conceded that he did not see or speak with Dr. Lehman regarding his legs and feet. (MSJ Ex. A: Transcript of *Spears* Hearing at 27-28.)  During the time period at issue, Dr. Lehman reviewed the decisions made by Dr. Woodall and other medical professionals. (MSJ Ex. C).

In support of his claims against Dr. Lehman, Plaintiff points out that Dr. Woodall originally approved diabetic shoes for Plaintiff in January, 2011, after he found that Plaintiff had "protective sensation with callous formation and neuropathy," but Dr. Lehman denied the diabetic shoes. (MSJ Ex. C at 206.)  A little more than a month later, however, Dr. Lehman approved diabetic shoes for Plaintiff because Plaintiff had begun to suffer from "cracks, sores to both feet." (MSJ Ex. C at 223.)

These facts do not amount to a constitutional violation.  First, Plaintiff did not present any evidence that the month delay in receiving his first pair of diabetic shoes caused him any harm.  Second, Plaintiff failed to establish that Dr. Lehman was deliberately indifferent to a serious medical need.  There is no evidence in the record that Plaintiff was exposed to a "substantial risk of serious harm" and that Dr. Lehman was aware of such risk and disregarded it. *See Farmer*, 511 U.S. at 838.  Dr. Lehman approved diabetic shoes for Plaintiff in February, 2011, and approved new diabetic shoes in March, 2012.  These approvals came after examinations revealed sores or cracks on Plaintiff's feet.  According to Dr. Woodall, the primary purpose of diabetic shoes is to limit foot wounds and injuries caused by improperly fitting shoes.

(MSJ Ex. B.)  Dr. Lehman approved diabetic shoes when wounds and/or injuries became a risk for Plaintiff.

Additionally, Plaintiff failed to allege, much less establish, that Dr. Lehman affirmatively participated in the alleged violation or implemented an unconstitutional policy that causally resulted in an injury to Plaintiff. *See Johnson*, 2002 WL 243359, at *1; *see also Stewart*, 174 F.3d at 536 (dismissing inmate's claims against the medical director of the Mississippi State Penitentiary ("Parchman") since he was not the inmate's treating physician and had limited contact with him); *Phillips v. Monroe County*, 143 F. Supp. 2d 663, 668 (N.D. Miss. 2001) (dismissing an inmate's claims against Parchman's medical director since he had no contact with the inmate).

Regarding Wexford, Plaintiff states he sued the health care entity because it is the employer of Dr. Woodall and Dr. Lehman and is responsible for their actions.  Plaintiff's statement amounts to an assertion that Wexford is vicariously liable for the actions of the two doctors.  Such claims are not cognizable under Section 1983.  Section 1983 "does not create supervisory or *respondeat superior* liability." *Oliver*, 276 F.3d at 742.  Moreover, the Court has determined that neither Dr. Woodall nor Dr. Lehman violated Plaintiff's constitutional rights.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs.  Defendants are entitled to judgment as a matter of law.

Left Knee

Plaintiff also claims that Dr. Woodall denied him treatment for his left knee.  In September, 2012, medical professionals examined Plaintiff for several complaints, including

pain in his knees, joints, and spine. (MSJ Ex. C at 513.)  After the examination, Dr. Woodall

approved the adjustment of Plaintiff's pain medications and the administration of a medication

for joint pain. (MSJ Ex. C at 515.)  Dr. Woodall also approved a wheelchair for Plaintiff. (MSJ

Ex. C at 517.)  In October, 2012, Plaintiff reported to a nurse that the medication for joint pain

was no longer helping and that he wanted his neuropathic pain medications increased. (MSJ Ex.

C at 527.)  The nurse noted that Plaintiff was not utilizing his wheelchair at that time. (MSJ Ex.

C at 527-28.)

On February 13, 2013, a nurse noted that Plaintiff was moving around without difficulty

and was not utilizing his wheelchair. (MSJ Ex. C at 874.)  The next day, Plaintiff complained of

a fall and pain in his left knee. (MSJ Ex. C at 865.)  The nurse practitioner noted swelling and

was "able to appreciate popping sensation to the left knee . . . ." (MSJ Ex. C at 865, 870.)

Therefore, the nurse practitioner ordered an x-ray of the knee and treated it with anti-

inflammatory drugs, including corticosteroids. (MSJ Ex. C at 865.)  The x-ray revealed:  "There

is no acute fracture or dislocation.  Joint spaces and alignment are maintained.  No joint effusion

is evident." (MSJ Ex. C at 966; 846.)  The radiologist found the image to be unremarkable. (MSJ

Ex. C at 966.)

In March, 2012, Plaintiff continued to complain about pain in his left knee. (MSJ Ex. C at

834.)  The nurse practitioner noted that there was no swelling, instability, or decrease in strength

or range of motion in the knee. (MSJ Ex. C at 834.)  She also noted that Plaintiff did not use his

wheelchair. (MSJ Ex. C at 834.)  Nevertheless, Dr. Woodall approved a medication for joint

pain, an elastic bandage, and a knee brace. (MSJ Ex. C at 828, 830.)

Plaintiff alleges that the treatment provided by Dr. Woodall was inadequate.  However,

14

Plaintiff has failed to demonstrate that Dr. Woodall was deliberately indifferent to Plaintiff's serious medical needs. *See Davidson*, 91 Fed. App'x at 964.  There is no evidence in the record that Plaintiff was exposed to a "substantial risk of serious harm" and that Dr. Woodall was aware of such risk and disregarded it. *See Farmer*, 511 U.S. at 838.

This claim amounts to a disagreement over the method of treatment for Plaintiff's left knee "injury."  As previously stated, a "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292.  Plaintiff was provided access to medical professionals and treatment.  The medical professionals assessed Plaintiff's condition, took an x-ray of his knee, administered medications, and provided medical devices, including a knee brace.  The x-ray taken of Plaintiff's knee did not show that Dr. Woodall was constitutionally required to provide Plaintiff with different or additional treatment.  Even if Dr. Woodall were negligent in his treatment of Plaintiff's knee, such does not rise to the level of a constitutional violation. *See Daniels*, 474 U.S. at 333-34; *McMahon*, 583 F.2d at 174; *Davidson*, 91 Fed. App'x at 965 (citing *Stewart*, 174 F.3d at 534).

Regarding any claims made by Plaintiff against Dr. Lehman or Wexford for the treatment of his knee, those claims should be dismissed.  Section 1983 does not create a claim for vicarious liability, and Plaintiff has failed to allege, much less establish, that Dr. Lehman or Wexford affirmatively participated in the alleged violation or implemented an unconstitutional policy that causally resulted in his injury. *Oliver*, 276 F.3d at 742.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to his serious medical needs.  Defendants are entitled to judgment as a matter of law.

*Retaliation*

Plaintiff claims that Dr. Woodall denied him treatment for his left knee and proper medications for his ailments in retaliation for filing a lawsuit.  Plaintiff also claims that Dr. Lehman denied his requests for diabetic shoes in retaliation for his prior complaints to Dr. Lehman while Plaintiff was housed at Parchman.  Indeed, filing a grievance is a constitutionally protected activity, and a prison official may not retaliate against an inmate for engaging in such protected activity. *Woods*, 60 F.3d at 1164.  In order to assert a retaliation claim, an inmate must show "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012).

Plaintiff must prove more than his personal belief that he is the victim of retaliation. *Johnson . Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  Plaintiff must establish causation by showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Id*.  This is a "significant burden" that requires the inmate to produce either direct evidence of motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166.

Plaintiff must also point to a specific constitutional right that was violated as a direct result of the retaliatory action. *Id*.; *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996).  A retaliatory adverse action is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). "[T]his threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id*.  For this reason, "mere conclusory

16

allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).

Plaintiff simply alleges that Dr. Woodall denied him treatment for his left knee because Plaintiff filed this action.  As evidence of retaliation on the part of Dr. Lehman, Plaintiff refers the Court to his time spent at Parchman.  According to Plaintiff, Dr. Lehman was an on-site doctor at Parchman where Plaintiff had been housed.  Dr. Lehman allegedly "threaten[ed] to discharge (and did discharge)" Plaintiff from inpatient care at Parchman. (Resp. at 7-8.)  After Plaintiff was transferred to SMCI, Dr. Lehman allegedly denied Plaintiff diabetic shoes because of their encounters at Parchman.

Plaintiff has failed to establish retaliatory intent on the part of either Defendant.  Plaintiff has not presented direct evidence of retaliatory motivation or a chronology of events from which retaliatory motivation may be plausibly inferred.  *See Woods*, 60 F.3d at 1166.  Plaintiff does not point to events that show Dr. Woodall and Dr. Lehman acted adversely toward Plaintiff.  Nothing in the record demonstrates that Dr. Woodall and Dr. Lehman altered their care of Plaintiff because he filed a lawsuit or grievance against them.  The information regarding Plaintiff's encounters with Dr. Lehman at Parchment do not support his retaliation claim.  As previously discussed, Plaintiff received adequate medical care from the Defendants.  Neither Dr. Woodall nor Dr. Lehman violated Plaintiff's constitutional rights.  Plaintiff has come forward only with immaterial facts and his subjective belief that he was the victim of retaliation by Defendants.  This does not satisfy Plaintiff's burden of proof to overcome a motion for summary judgment on a retaliation claim. *See Jones*, 188 F.3d at 325.

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to

whether Defendants unconstitutionally retaliated against Plaintiff.  Defendants are entitled to

judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motions for Summary

Judgment [36] should be granted.  Accordingly,

IT IS THEREFORE, ORDERED that:

1.   Defendants' Motion for Summary Judgment [36]is GRANTED and that this action is dismissed with prejudice.

2.   A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this, the 3rd day of January, 2014.

s/ Michael T. Parker
_____
United States Magistrate Judge